## GEORGE CHESTER *v.* THE STATE.

1. CHARGE OF THE COURT.—A refusal to instruct the jury on the weight of testimony is not erroneous unless the requested instruction relates to testimony within some defined exception to the general rule, as, for instance, the testimony of an accomplice.

2. SAME—ON CREDIBILITY OF AN IMPEACHED WITNESS.—Though an attempt has been made to impeach a witness, his testimony is before the jury for their consideration. Its credibility and weight is for their determination, and it is beyond the authority of the court to instruct the jury to disregard it in case they believe the witness has been successfully impeached.

3. ALIBI.—The defense of an *alibi*, though sometimes indispensable in protection of innocence, is liable to great abuse, by reason of the facility with which it may be fabricated, and the difficulties incident to its detection and exposure when falsely set up.

4. THEFT—VERDICT.—Indictment charged a theft of $1,800 in United States notes of certain denominations; the verdict found the accused "guilty of theft of more than twenty dollars." It was objected that the verdict was not for the offense charged in the indictment. But *held*, that in construing a verdict the object is to arrive at the meaning of the jury, which, in this case, is sufficiently obvious, their language being readily accounted for by the issues submitted to them by the charge of the court.

APPEAL from the Criminal District Court of the county of Galveston. Tried below before the Hon. GUSTAVE COOK.

A clear and ample statement of this case will be found in the opinion. The witness Thomas Shanholtz was indicted jointly with the appellant, but was tried and acquitted prior to the trial of the latter. It appears that the appellant had got Shanholtz to change the $100 note, which the latter placed in the hands of the sheriff. The court below ordered the sheriff to retain the note until the final adjudication of this cause, and directed that the balance of the money recovered, which amounted to $1,040, be turned over to Mrs. Sylvester.

The somewhat peculiar language of the verdict is doubtless attributable to the fact that the court below, in view of the proof that only a portion, but more than $20, of the stolen money was found on the appellant's premises, gave explicitly in charge to the jury the statutory penalty for theft of property of greater value than $20.

*Languille & Catlin*, for the appellant. We respectfully submit that the verdict returned into court is too vague and indefinite to support a judgment. That the verdict must be responsive to the issue is too clear to need the support of authorities.

The issue tendered by the state to the defendant was the theft of one $100 treasury note, and of certain other notes, commonly called greenbacks, of the aggregate value of $1,750.

The verdict of the jury is as follows: "We, the jury,. find the defendant, George Chester, guilty of theft of more than twenty dollars, and assess the punishment at five years. in the penitentiary."

What, if your honors please, is the legal import of this verdict? Of what crime have they found this appellant guilty? They certainly do not say by their verdict that they find him guilty of theft of the property described in the indictment. The verdict is that he has stolen more than $20. Was he charged with stealing money or dollars, within the legal acceptation of these terms? We think not. Clearly he was accused of theft of property of more value than $20. The verdict cannot be cured by intendment,. because it is complete within itself. The word "dollars" clearly conveys the idea of money, and by their verdict the jury say that this appellant has been guilty of a crime known to our laws, but of which no charge had been preferred against him. The property described in the indictment is not money under our laws. *Block* v. *The State,.* 44 Texas, 620.

*George McCormick*, Assistant Attorney General, for the State.

*Wills & Tevis*, of counsel for the State.

ECTOR, Presiding Judge. The errors assigned as committed on the trial of this cause in the lower court are:

"1st. The court erred in its general charge to the jury, because the same was not applicable to the facts of this case.

"2d. The court erred in refusing to give the six special instructions asked by the defendant.

"3d. The court erred in rendering judgment and passing sentence upon the verdict of the jury, because said verdict

was not responsive to the issue, and found defendant guilty of a different crime than that charged against him.

"4th. The court erred in refusing to the defendant the privilege to prove that Mary Sylvester kept an assignation house."

The indictment charges the defendant with the theft of one United States legal-tender note of the denomination and value of $100; fifty United States legal-tender treasury notes, commonly called greenbacks, each of the denomination and value of $20 : fifty bills in United States currency, commonly called greenbacks, each of the denomination and value of $10, and fifty bills in United States currency, commonly called greenbacks, each of the denomination and value of $5, the property of Mary Sylvester, *alias* Mary Packingham.

The indictment is a good one. There is no exception taken to it. The presiding judge delivered to the jury a charge in which he clearly set forth the law applicable to the case. In it he instructed the jury that the defendant is presumed to be innocent until his guilt is established by the evidence, and that, in case they had a reasonable doubt of his guilt, he was entitled to be acquitted. It was so clear in its meaning that it could not be mistaken by the jury and fully covered every material allegation in the indictment.

The evidence in the record shows that Mrs. Mary Packingham drew from a bank in the city of Galveston, on the 8th day of July, 1876, $1,850 in money of the denominations and value as described in the indictment. This money she wrapped up in a paper and placed in a basket which she had with her. She went to Freedmen's Hall, in the city, where she exhibited her money to the bar-keeper, and it was seen by the defendant. This was between eleven and twelve o'clock. From there she went to Devotee's Corner, and there took a street car for her home, between Eighteenth

45

and Nineteenth streets, on avenue N. She says she arrived at home about twelve o'clock; that she set down the basket, with the money in it, in the front room of her house; went out in the yard, to the cistern, and prepared a pitcher of ice-water, which took her about five minutes; that she then returned to the room and found her money and basket both gone.

From the testimony of other witnesses it appears that soon after she left the Freedmen's Hall defendant also left there, went away, was absent awhile, and returned. From Freedmen's Hall to the residence of Mrs. Packingham was about ten of the city blocks distant. Between twelve and one o'clock on the day the money was stolen defendant took the witness Shanholtz to his room and exhibited a large amount of bills, just such as Mrs. Packingham had lost. He made contradictory statements as to how he got the money. He had, only the day before, pawned his watch for $2. On the Sunday following he handed Smith Washington a roll of money, asking him to keep it, and on Monday he went to Shanholtz's shop and threw on the floor a $100 bill, which Shanholtz picked up and gave him the change for. This bill was afterwards identified by Mrs. Packingham and her daughter, in court, as a part of the stolen money.

On the 11th of July the defendant's house was searched, when $9 in specie were found in his trunk, and $1 in his pocket. He said that was all the money he had; and then and there, on further search of the premises, $660 in $10 bills were found in a tin can under his house, which he claimed, and also $280 which were buried on the lot. All the evidence in the record tends to show that he did not make this money by honest industry or by gaming. He does not account for it. We find him without funds just before the money was stolen; just after, with an amount much larger than he was ever seen to have before, and a

portion of it was identified as a part of the stolen money. All the facts and circumstances of this case, when taken together, were sufficient to lead the mind of the jury to the deliberate conclusion, beyond a reasonable doubt, that the defendant, and no other person, committed the offense charged.

We do not think that the court erred in refusing to give the charges asked by the counsel for the defendant. The court had given the defendant, as before stated, the full benefit of a charge to the jury as to the presumption of innocence, and on a reasonable doubt.

Whilst it is true that, in cases dependent on circumstantial evidence alone, a jury should not convict a defendant unless the facts are not only consistent with the guilt of the defendant, but incapable of explanation upon any other hypothesis than that of his guilt, yet, as the jury are the sole and exclusive judges of the weight of the testimony, whether it be positive or circumstantial, it cannot be properly said to be an error for the court to refuse to charge the jury upon legal presumptions and degrees of weight in testimony, unless some part of the testimony comes within the defined exceptions to the general rule, such as that " a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed."

If testimony has been offered to impeach a witness who has testified in a cause, for the same reason it would be improper for the court to instruct the jury that, "if any witness having testified in the cause had been impeached to their satisfaction, they should disregard his testimony." When an attempt has been made to impeach a witness, his testimony is before the jury, and the presiding judge has no legal authority to tell the jury they should disregard his testimony if they believe he has been successfully impeached. His testimony is before them, and the question of his credi-

bility is for the jury.  *Brown* v. *The State*, 23 Texas, 195 ;
*Boon* v. *Weathered*, 23 Texas, 687.

It is insisted on the part of the counsel for the defend-
ant that his client accounted for himself and his whereabouts,
on the day of the theft, from about the hour of noon until
four o'clock, P. M., showing that during those hours he was
not near the house of Mary Packingham, and that he could
not have committed the theft, inasmuch as the entire evi-
dence offered by the state shows that it took place at her
house at or near the hour of half-past twelve, and that, with an
*alibi* proved, the court should have submitted to the jury the
issue as to whether or not the defendant, at the time the theft
was committed, was in such proximity to the house of the said
Mary as would have enabled him to have committed the
theft for which he was on trial.

Whilst an *alibi* is sometimes the only defense which an
innocent man can make against an unfounded charge, this
defense, as our every-day experience teaches us, is greatly
liable to abuse, growing out of the ease with which it may
be fabricated, and the difficulty with which such fraud and
perjury are detected.   When such a defense is attempted to
be made, it should go to the jury like other evidence, the
jury being the sole judges of the credibility of the witnesses
and the weight of the testimony.   The evidence of the tes-
timony on both sides, taken together, does not represent the
accused as having been at both places at once ; but only as
having been at one time in the one place, and at the other time
in the other place.   The jury, doubtless, in considering the
rapidity with which the defendant could have passed from
one place to the other, believed he could have arrived at the
house of Mrs. Packingham in time to have committed the
theft, and then returned to the barber-shop of the witness,
Thomas Shanholtz, between twelve and one o'clock of the
day on which the theft was committed.   Besides this, the
jury, doubtless, were not unmindful of the fact that the

witnesses do not swear positively as to the exact period of time in either case. As a general rule, men do not note time with precision, particularly where it does not concern their own affairs, even where the occurrence itself is observed with some minuteness. It is seldom the case that two witnesses agree as to the exact time of day when an occurrence happened. In this case no witness made observation of the hour by any time-piece, or with reference to some future use to be made of his observation.

We do not believe that the objection to the verdict is well taken. By first reading the charge of the court, we may readily account for the language employed by the jury in finding their verdict. In construing a verdict, the main object is to get at the meaning of the jury. This can be clearly ascertained from the verdict itself, and it is in response to the issues submitted by the court to the jury.

The judgment of the lower court is affirmed.

*Affirmed.*